UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :

UNITED STATES OF AMERICA,                 :

                                             :

        -v-                            :          20 Cr. 673 (JPC)

                                             :

OSCAR RIOS,                         :          <u>OPINION AND ORDER</u>

                                           :

                     Defendant.          :

                                           :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Defendant Oscar Rios, who is currently serving a 115-month federal sentence imposed by this Court for his role in a violent armed robbery in the Bronx, moves for relief from that sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  After a federal grand jury returned an indictment charging Rios in this case, he was arrested in North Carolina on unrelated state charges.  While in state custody but present in federal court on a writ of habeas corpus *ad prosequendum*, Rios pleaded guilty to conspiracy to commit Hobbs Act robbery.  Following his federal sentencing on April 14, 2022, Rios pleaded guilty in North Carolina state court to firearm and narcotics charges arising from his earlier arrest.  On September 29, 2022, the state judge imposed a sentence of fourteen-to-twenty-six months in prison, to run concurrently with Rios's federal sentence in the instant case.  Rios completed his North Carolina sentence in October 2022, after spending twenty-two months in state custody, at which point he was transferred to the custody of the Bureau of Prisons ("BOP") to begin serving his federal sentence in this case.

      Now, after the BOP determined that Rios must serve his federal sentence consecutively to his state sentence, Rios asks this Court to "[a]djust his federal sentence to reflect concurrency

with" his twenty-six-month state sentence.  Dkt. 115-1 ("Motion")[1] at 5.[2]  For reasons that follow, Rios's motion is denied.  To the extent Rios challenges the BOP's refusal to credit his time in state custody toward his federal sentence, a Section 3582 motion is not the proper vehicle to pursue such relief.  To the extent Rios seeks a reduction of his federal sentence, he fails to meet the standards for relief under Section 3582(c)(1)(A)(i): requiring Rios to serve consecutively his state and federal sentences—which were imposed for entirely distinct criminal conduct—does not amount to an extraordinary and compelling reason for purposes of Section 3582(c)(1)(A)(i), and the relevant factors under 18 U.S.C. § 3553(a) strongly counsel against a reduction of his federal sentence.

## I.  Background

### A.    Offense Conduct[3]

In the early morning hours of August 29, 2020, Rios coordinated a violent and brutal robbery in a Bronx apartment that sent a victim ("Victim-1") to the hospital for ten days after suffering a gunshot wound and significant facial trauma.  PSR ¶¶ 13-14, 18, 20, 24.  Rios knew that Victim-1 was selling liquor and marijuana from his apartment near Tinton Avenue in the Bronx, and believed that Victim-1 also kept the cash proceeds from those sales in that apartment.

---

[1] The page numbers cited herein for Rios's motion including the attached exhibits are to the ECF-generated page numbers for Docket Number 115-1.

[2] According to the Government, Rios served twenty-two months in state custody.  Dkt. 118 ("Opposition") at 3.

[3] The following description of Rios's offense conduct is based on information in the revised Presentence Investigation Report, dated April 27, 2022, Dkt. 98 ("PSR"), which corrected an error in the prior report that the Government raised at sentencing, Dkt. 99 ("Sentencing Tr.") at 8:18-9:7.  That error, which concerned which perpetrator wore a particular hoodie, *id.*, did not impact the factual recitations in the Presentence Investigation Report discussed herein.  *See id.* at 8:15-9:9 (confirming that neither party objected to the factual recitations in the Presentence Investigation Report, aside from that error).

*Id.* ¶¶ 13-14.  A little before 2:30 a.m. on August 29, Rios set the plan in motion.  *Id.* ¶ 20.  He entered Victim-1's apartment building from the back and then opened the front door to let in his co-Defendants, Shawn Garcia and Sutha Taylor, and a third person ("CC-1").  *Id.*  A few minutes later, another coconspirator contacted Victim-1 purportedly to buy liquor and Rios then informed Garcia, Taylor, and CC-1 to expect Victim-1 to soon open his apartment door.  *Id.* ¶ 14.  Once Victim-1 opened his door, Garcia, Taylor, and CC-1 forced their way into the apartment and assaulted Victim-1, striking him several times in the head with a firearm.  *Id.* ¶ 15.  Victim-1's girlfriend ("Victim-2"), who had been asleep in a bedroom, was woken up by the altercation.  *Id.* ¶ 16.  When Victim-2 tried to leave the bedroom, one of the robbers pointed a firearm at her, held her head down, threw her into the bathroom, and ordered her to stay there.  *Id.*  While Victim-2 was in the bathroom, one of the robbers shot Victim-1 in the buttocks.  *Id.* ¶ 17.  Another robber returned to Victim-2 and demanded that she reveal the location of Victim-1's safe.  *Id.*  Victim-2 then was dragged to the bedroom with a garment bag over her head, where she identified what she understood to be the key to the safe.  *Id.*

Meanwhile, Rios, who was standing watch outside the apartment, sent text messages to Garcia and Taylor updating them, "Everything clear down here," "Everything good still," and "Everything still good down here."  *Id.* ¶ 24.  Having received Rios's green light, Garcia, Taylor, and CC-1 fled the apartment building, taking with them the safe containing Victim-1's liquor and marijuana sales proceeds, keys, more cash from Victim-1's dresser, Victim-1's cell phone, and marijuana.  *Id.* ¶ 17.

## B.    Procedural History

On November 25, 2020, Rios was charged in a Complaint with conspiracy and substantive Hobbs Act robbery counts, both in violation of 18 U.S.C. § 1951.  Dkt. 1.  On December 8, 2020,

a federal grand jury in this District indicted Rios for those two offenses as well as for possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Dkt. 12. Rios was arrested on December 15, 2020, in North Carolina by local law enforcement and was charged there with state offenses unrelated to his then-pending federal charges. Opposition at 2; *see* PSR ¶ 27; *see also* Motion at 19 (North Carolina "Transcript of Plea" reflecting that Rios pleaded guilty to offenses that occurred on December 15, 2020).

Because Rios remained in state custody following his December 15, 2020 arrest, he appeared in this District pursuant to a writ of habeas corpus *ad prosequendum*. *See Rios v. Warden, F.C.I. Berlin*, No. 24-cv-65-SE-AJ, Dkt. 10 at 3 (D.N.H. Nov. 18, 2024). His initial appearance occurred on April 29, 2021, Dkt. 44, and he pleaded not guilty at his arraignment on May 5, 2021, Minute Entry, May 5, 2021. On October 6, 2021, Rios pleaded guilty to participating in a Hobbs Act robbery conspiracy in connection with the August 29, 2020 robbery of Victim-1's apartment, pursuant to a plea agreement with the Government. PSR ¶ 7; Dkt. 57 (transcript of Rios's guilty plea proceeding).

This Court sentenced Rios on April 14, 2022. At sentencing, the Court made clear that it would not take Rios's North Carolina case into consideration. Sentencing Tr. at 20:1-2.[4] Consistent with the stipulation of the parties in the plea agreement and the Probation Office's calculation in the Presentence Investigation Report, the Court arrived at an offense level under the United States Sentencing Guidelines of twenty-nine, which included a seven-level enhancement because a firearm was discharged, *see* U.S.S.G. § 2B3.1(b)(2)(A), a four-level enhancement

---

[4] At the sentencing hearing, the Government represented that the North Carolina case remained open. Sentencing Tr. at 15:17-23, 16:19-21, 34:19-35:1. Rios's counsel contradicted that representation, stating that he "believe[d] that that case [was] not pending or open," based on information in the Presentence Investigation Report that a charge out of North Carolina described as "Extradition/Fugitive Other State" had been dismissed. *Id.* at 19:19-25; *see* PSR ¶ 58.

because Victim-1 sustained serious bodily injury, *see id.* § 2B3.1(b)(3)(B), and a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1, and a criminal history category of III,[5] resulting in an advisory Guidelines range of 108 to 135 months in prison. *See* Sentencing Tr. at 9:19-12:21, 37:19. After considering the applicable factors under 18 U.S.C. § 3553(a), and emphasizing that "the August 29, 2020 robbery was an exceedingly violent and horrifying crime" for which "Rios was the mastermind," the Court imposed a sentence of 115 months' imprisonment and three years of supervised release. *Id.* at 37:16-47:25.

Rios subsequently pleaded guilty in North Carolina state court in Cabarrus County for offenses related to the conduct that gave rise to his arrest on December 15, 2020, and was sentenced by Judge Jesse B. Caldwell IV to fourteen-to-twenty-six months in prison on September 29, 2022. Motion at 18-31. In the judgment for that sentence, Judge Caldwell credited Rios with 654 days reflecting the time Rios spent in custody since his arrest, and ordered that the state sentence run concurrently with Rios's federal sentence in the instant case. *Id.* at 22-23. Rios completed his state sentence three weeks later on October 19, 2022, at which point he began serving the 115-month federal sentence imposed in this case. *See Rios*, No. 24-cv-65-SE-AJ, Dkt. 10 at 4.

In January 2023, Rios made his first attempt to effectively shorten his federal detention by petitioning the BOP to credit him the 654 days he spent in state custody between his arrest and his sentencing by Judge Caldwell. *Id.* The BOP denied that request because that time already had been credited toward Rios's state sentence. *Id.* Rios challenged the BOP's determination in a petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed in the District of New Hampshire,

---

[5] At sentencing, the Court determined that Rios had six criminal history points, not five points as contemplated in his plea agreement, based on a youthful offender adjudication that was not included in the agreement. Sentencing Tr. at 10:1-20, 12:4-7, 12:19. Neither party objected to the inclusion of this youthful offender adjudication toward Rios's criminal history, which in any event did not impact his criminal history category which remained III. *Id.* at 10:6-8, 10:16-20.

the District where he is incarcerated.  Motion at 32-41; *Rios v. Warden, F.C.I. Berlin*, No. 24-cv-65-SE-AJ, Dkt. 1 (D.N.H. Mar. 4, 2024); *see* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Dec. 3, 2025) (reflecting that Rios is detained at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin")).  In a Report and Recommendation, the Honorable Andrea K. Johnstone, United States Magistrate Judge, recommended the denial of Rios's habeas petition.  *Rios*, No. 24-cv-65-SE-AJ, Dkt. 10 at 9.  On January 7, 2025, the Honorable Samantha D. Elliott, United States District Judge, adopted the Report and Recommendation and granted summary judgment in favor of FCI Berlin's warden.  *Rios v. Warden, F.C.I. Berlin*, No. 24-cv-65-SE-AJ, Dkt. 12 (D.N.H. Jan. 7, 2025).

Rios's second effort to reduce his time in federal custody has culminated in the pending motion.  On June 30, 2025, Rios requested that FCI Berlin's warden move before this Court for his compassionate release based on the BOP's refusal to credit Rios for "time previously served in state custody that relates back to [Rios's] initial arrest."  Motion at 8 (Rios's June 30, 2025 email to the warden) ("In the event that the BOP can[]not grant me the requested time credits I am seeking the adjustment of my sentence from my original sentencing judge who requires jurisdiction in order to change my sentence and this is my extraordi[na]ry and compelling circumstance that will suffice pursuant to 1b1.13(b)(5).").  On July 3, 2025, the warden denied Rios's request, which he construed as one seeking "Compassionate Release/Reduction in Sentence" "premised on the belief that [Rios is] owed Prior Jail Credits by the Federal Bureau of Prisons based on time served in state custody."  *Id.* at 7 (FCI Berlin's warden's July 3, 2025 response to Rios's request).  The warden explained that "a request for a Reduction in Sentence is not the avenue to contest [Rios's] Prior Jail Credits."  *Id.*

Rios turned to this Court on July 30, 2025.  Invoking 18 U.S.C. § 3582(c)(1)(A)(i), Rios asks the Court to "[a]djust his federal sentence to reflect concurrency with the 26-month Cabarrus County sentence[] as originally ordered by the state court" and to "[d]irect the Bureau of Prisons to recalculate his time served, enabling him to properly benefit from the First Step Act Credits and reentry eligibility."  Motion at 5.  The Government filed its opposition on October 9, 2025.  Dkt. 118.

## II.  Legal Standard

Section 3582(c)(1)(A) "permits a defendant to move for a reduction in sentence, up to and including release from prison, in federal district court."  *United States v. Jones*, 17 F.4th 371, 373-74 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).[6]  The statute provides, in relevant part, that a district judge "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

The party moving for a sentence reduction "has the burden of showing that the circumstances warrant that decrease."  *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *accord United States v. Sellick*, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order).  Thus, as the moving party, Rios must show that: (1) he exhausted his

---

[6] As the Second Circuit recently noted, "[s]uch motions are sometimes colloquially identified as 'compassionate release' motions," but that "term is a misnomer, as the statute allows for sentence *reductions*, and not simply release."  *United States v. Coonan*, 143 F.4th 119, 121 n.1 (2d Cir. 2025).  This Court follows the Second Circuit in primarily using "sentence reduction" to more accurately reflect the scope of relief available under the statute.  *See id.*

7

administrative remedies;[7] (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a), on balance, do not cut against such reduction. *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

### III.  Discussion

#### A.    Rios's Challenge to the Execution of His Sentence

In seeking relief under Section 3582(c)(1)(A)(i), Rios asks this Court to "enforce[]" the order of Judge Caldwell directing that Rios's state sentence run concurrently with his federal sentence.  Motion at 2.  He argues that "[t]he BOP's refusal to honor the concurrency order frustrates the state court's judgment, extending [Rios's] imprisonment by 26 months." *Id.*; *accord id.* at 3 ("The BOP's refusal to enforce the state court's concurrency order effectively extends Petitioner Rios' imprisonment by 26 months beyond what was intended by both state and federal sentencing courts.").  And he asks this Court to "[d]irect the Bureau of Prisons to recalculate his time served." *Id.* at 5.  Thus, his motion plainly takes issue with the BOP's determination that his federal sentence should run consecutively to his state sentence.  In other words, Rios challenges the BOP's execution of his sentence in deciding not to credit his time in state custody toward his federal sentence.

But 28 U.S.C. § 2241 is the proper channel for a "challenge to the execution of a sentence." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (emphasis omitted) (holding that Section 2241 provides the basis for challenging the execution, as opposed to the imposition, of a sentence).  A

---

[7] Depending how one construes Rios's request to the warden at FCI Berlin, the instant motion may seek a greater reduction of his sentence than he requested with the warden.  The Government does not dispute that Rios exhausted the BOP's administrative remedies, *see* Opposition at 3-4, so the Court proceeds to consider Rios's motion on its merits. *Cf. United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the Government may waive or forfeit the exhaustion requirement).

sentence's "execution" includes "calculations by the Bureau of Prisons of the credit to be given for other periods of detention." *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002) (cleaned up); *see also Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000) ("Requests for sentence credit, or for recalculation of time yet to serve, . . . must be presented to the Attorney General (or her delegate, the Bureau of Prisons), and adverse decisions may be reviewed by an action under 28 U.S.C. § 2241."). Indeed, Rios unsuccessfully petitioned for a writ of habeas corpus under Section 2241 in the District of New Hampshire, the District where he is incarcerated, challenging the BOP's determination that he could not receive credit toward his federal term for the 654 days he spent in state custody from his arrest until his sentencing by Judge Caldwell (time which was in fact credited toward his state sentence). *See Rios*, No. 24-cv-65-SE-AJ, Dkt. 10 (Report and Recommendation) at 9; *Rios*, No. 24-cv-65-SE-AJ, Dkt. 12 (adopting the Report and Recommendation). And in any event, this Court would not be the proper venue for a Section 2241 petition because Rios is not confined in this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443-44 (2004); *see also Simon v. United States*, 359 F.3d 139, 144-45 (2d Cir. 2004) (holding that a district court cannot *sua sponte* convert a Section 3582 motion into a Section 2241 petition without first giving a defendant notice and an opportunity to decline the conversion or withdraw the motion).

Construing Rios's *pro se* filing liberally, the Court next considers Rios's motion as one seeking a sentence reduction under Section 3582(c)(1)(A)(i). For reasons that follow, he has not shown any extraordinary and compelling reason to warrant a sentence reduction, and the Section 3553(a) factors strongly counsel in favor of maintaining his federal sentence as imposed.

9

**B.    Extraordinary and Compelling Reasons**

Congress did not define extraordinary and compelling reasons warranting a sentence reduction, so the Court looks to the plain meaning of Section 3582(c)(1)(A)(i) and the Sentencing Commission for the standard Rios must satisfy. *United States v. Fernandez*, 104 F.4th 420, 427-28 (2d Cir. 2024); *see United States v. Duarte*, No. 99 Cr. 192 (CSH), 2025 WL 1434886, at *4-6 (S.D.N.Y. May 19, 2025). A circumstance is "extraordinary" if it is "most unusual, far from common, and has little or no precedent." *Fernandez*, 104 F.4th at 428 (cleaned up). A "'compelling' reason is both powerful and convincing." *Id.* (cleaned up). Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under Section 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission did so in its policy statement in Guideline Section 1B1.13. Under Section 1B1.13, "extraordinary and compelling" circumstances may arise from the defendant's medical condition, age, family circumstances, abuse by prison authorities, and, under certain conditions, the unusual length of the defendant's sentence when there has been a change in the law. U.S.S.G. § 1B1.13(b)(1)-(4), (6). Section 1B1.13 also allows courts to consider any other circumstance or combination of circumstances that, either on its own or combined with the reasons identified in subsections (b)(1) through (b)(4) (*i.e.*, medical circumstances, age, family circumstances, and abuse), "rise to the level of gravity" of those four reasons. *Id.* § 1B1.13(b)(5). It further provides that the defendant's rehabilitation may be considered as a factor in the "extraordinary and compelling" inquiry, although rehabilitation cannot serve as the sole basis for reducing a sentence. *Id.* § 1B1.13(d). *See generally United States v. Mendez-Rojas*, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *2-4 (S.D.N.Y. Sept. 30, 2024) (outlining these background principles).

Rios seeks relief under Section 3582(c)(1)(A) based on Judge Caldwell's order in his state court judgment that Rios serve his state and federal sentences concurrently.  Motion at 2; *see id.* at 22-23.  As noted at *supra* III.A, to the extent Rios asks the Court to direct the BOP to "recalculate his time served" by giving him credit for his state sentence, *id.* at 5, that request is denied as such an application must be brought as a petition for writ of habeas corpus under Section 2241.  But a Section 3582(c)(1)(A) motion is the proper vehicle for Rios to seek a reduction of his federal sentence.  *Cf.* Motion at 5 (asking the Court to "[a]djust his federal sentence to reflect concurrency with the 26-month Cabarrus County sentence[] as originally ordered by the state court").  But even construed as such, Rios's motion fails because he has not shown any extraordinary and compelling reason that warrants an adjustment.

First, a "state court's intent is not binding on federal authorities."  *McCarthy v. Doe*, 146 F.3d 118, 120-21 (2d Cir. 1998) (citing *United States v. Sackinger*, 704 F.2d 29, 32 (2d Cir. 1983)); *see Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005).  Judge Caldwell, as a North Carolina state judge, lacked authority to impose conditions on Rios's state sentence that would impact the length of his separately-imposed federal sentence.  At the time Judge Caldwell imposed that sentence, Rios was in state, not federal, custody.  While Judge Caldwell of course could determine the length of Rios's state sentence—which he did by imposing a sentence of fourteen-to-twenty-six months' imprisonment—Judge Caldwell could not issue a directive that would impact Rios's federal sentence, which was imposed for an entirely distinct crime and which Rios had not yet begun to serve.

Second, Rios is mistaken to contend that denying him credit for his state sentence toward his federal sentence would frustrate this Court's intent.  *See* Motion at 3 ("The BOP's refusal to enforce the state court's concurrency order effectively extends Petitioner Rios's imprisonment by

11

26 months *beyond what was intended by both the state and federal sentencing courts*." (emphasis added)); *id.* at 4 (arguing that "concurrent sentences should be applied as ordered *by the sentencing courts*" (emphasis added)).  To be sure, this Court did not order that Rios's federal sentence be concurrent with any state sentence.  To the contrary, this Court expressly declined to consider Rios's North Carolina case at sentencing.  Sentencing Tr. at 20:1-7.  Indeed, this Court explained in detail at sentencing why a 115-month term of imprisonment was appropriate given Rios's offense conduct and the applicable Section 3553(a) factors *in this case*.  *Id.* at 37:16-47:25.

Third, it is far from "extraordinary" for a prisoner to serve consecutive state and federal sentences.  *See Jenkins v. United States*, 246 F.R.D. 138, 140 (E.D.N.Y. 2007) (collecting cases).  That is particularly the case where, as here, the two sentences involve entirely unrelated conduct occurring on separate dates, with each warranting its own punishment.  In fact, Congress has not only contemplated consecutive sentences, but established a presumption in its favor when two sentences are imposed on different dates.  *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").  Thus, serving consecutive sentences for distinct criminal conduct is hardly a "far from common" circumstance with "little or no precedent."  *Fernandez*, 104 F.4th at 428.

An inmate must satisfy a high standard to secure a sentence reduction under Section 3582(c)(1)(A)(i).  *See Duarte*, 2025 WL 1434886, at \*4 (observing that "a motion for compassionate release . . . is not a favored motion in the law").  Rios fails to show that serving his federal sentence consecutively to his state sentence, where each was imposed for distinct criminal conduct, is an extraordinary and compelling reason that warrants a sentence reduction, even if the state judge contemplated otherwise with respect to the sentence he imposed.

C.      **Section 3553(a) Sentencing Considerations**

Even if Rios could establish an extraordinary and compelling reason for a sentence reduction, the sentencing considerations in Section 3553(a) counsel strongly against reducing his federal sentence. The relevant Section 3553(a) factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need "to afford adequate deterrence to criminal conduct"; and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Rios engaged in extremely serious and dangerous criminal conduct, which resulted in significant injury to a victim. He was the mastermind of an armed robbery that unsurprisingly turned violent. Rios slipped into the back of Victim-1's apartment building and opened the front door to give Garcia, Taylor, and CC-1 access. PSR ¶ 20. He coordinated with another coconspirator who tricked Victim-1 into opening the door of his apartment, and then alerted Garcia, Taylor, and CC-1 so they could barge in. *Id.* ¶¶ 14-15. During the robbery, Rios served as the lookout as Garcia, Taylor, and CC-1 searched Victim-1's apartment for cash and drugs, beat and shot Victim-1, pointed a gun at his girlfriend, Victim-2, and dragged her through the apartment as they forced her to turn over the key to the safe. *Id.* ¶¶ 15-17, 24. Rios told Garcia, Taylor, and CC-1 that the coast was clear so that they could flee the scene with the safe, cash proceeds from Victim-1's liquor and marijuana sales, Victim-1's cell phone, and marijuana. *Id.* ¶¶ 17, 24. Viciously assaulted, Victim-1 needed to spend ten days in the hospital to recover from the gunshot wound and strikes to his face. *Id.* ¶ 18. As the Court discussed at the sentencing, while Rios did not assault either victim, there is no question that he was instrumental in orchestrating the robbery and ensuring Garcia, Taylor, and CC-1's escape, and that he understood the significant risk that

13

the criminal mission would involve violence. Sentencing Tr. at 41:11-18. The nature and circumstances of Rios's offense, the seriousness of that offense, and the need for just punishment thus counsel against a sentence reduction.

So do Rios's history and characteristics, the need to protect the public from further crimes by Rios, and the need for deterrence. While Rios's extremely difficult upbringing, *see* PSR ¶¶ 60-61, 63, 69, weighs in his favor, the Court also must consider Rios's extensive criminal history, including an assault and several firearms offenses. Rios's prior sentences unfortunately have failed to deter him from reengaging in criminal conduct. This was Rios's seventh criminal conviction since he was eighteen years old. *Id.* ¶¶ 45-50. At age eighteen, Rios struck a store owner in the face with a metal pole. *Id.* ¶ 47. Less than a year later, he was found with four firearms, ammunition, and marijuana. *Id.* ¶ 48. After serving three years in prison for that offense, he committed multiple driving-under-the-influence offenses. *Id.* ¶¶ 48-50. And, as discussed, following this Court's sentence, Rios pleaded guilty to firearm and drugs offenses in North Carolina for conduct that occurred fewer than four months after the August 29, 2020 robbery. Motion at 18-19.

Rios points to his completion of educational and vocational programs while incarcerated. *Id.* at 4; *see id.* at 10-15 (certificates for courses and programs Rios has completed while incarcerated). The Court commends Rios for his rehabilitation efforts and reentry planning, but those efforts do not support a sentence reduction where other Section 3553(a) factors so strongly weigh in favor of keeping his sentence intact.

For these reasons, reducing Rios's sentence—whether by twenty-six months or a shorter period—would fail to reflect the nature and seriousness of the offense, provide just punishment for that conduct, promote respect for the law, achieve adequate deterrence, protect the public from

14

future crimes by Rios, and account for Rios's history and characteristics.  On balance, the Section 3353(a) factors weigh strongly against shortening the sentence this Court imposed.

### IV.  Conclusion

Rios's motion for a sentence reduction therefore is denied.

SO ORDERED.

Dated: December 4, 2025
      New York, New York

                                 JOHN P. CRONAN
                         United States District Judge

15